COURT OF APPEALS OF VIRGINIA

<div style="transform: rotate(-90deg)">UNPUBLISHED</div>

Present:  Chief Judge Felton, Judges Alston and Chafin
Argued at Salem, Virginia


JONATHAN COLLINS

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0974-13-3                         JUDGE ROSSIE D. ALSTON, JR.
                                                           JUNE 3, 2014
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                          Stacey W. Moreau, Judge

        William Edward Cooley for appellant.

        Victoria Johnson, Assistant Attorney General (Kenneth T.
        Cuccinelli, II,[1] Attorney General, on brief), for appellee.


        Jonathan Collins (appellant) appeals his conviction of grand larceny in violation of Code

§ 18.2-95.  On appeal, appellant alleges that the trial court "erred in finding that venue was

proper in this case when there was insufficient proof that the alleged crime occurred in

Pittsylvania County."  We agree and therefore reverse appellant's conviction and remand the

case to the trial court for further proceedings, should the Commonwealth be so advised.

                                    I.  Background

        The evidence indicated that appellant worked for Curtis Pritchett, a self-employed

construction worker, in July and August 2012.  On August 20, 2012, Pritchett noticed that a jamb

saw and a sheetrock drill were missing from his trailer that he used to haul equipment to different

construction jobs.  Pritchett did not know when the tools went missing.  The missing items were

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Mark R. Herring succeeded Kenneth T. Cuccinelli, II, as Attorney General on January
11, 2014.

kept in a locked, enclosed trailer, and Michael Boyd, another employee of his, was the only other person with a key to the trailer. The only time Pritchett recalled leaving appellant alone on a job site with the trailer was on a Saturday when appellant and Boyd were working behind "GW high school" located "in the city."[2] When asked if the trailer was in Pittsylvania County when the stolen items went missing, Pritchett said "I think so." When asked what job he was working when the items went missing Pritchett responded, "I can't remember sir. I've done so many [jobs] it's hard to keep up with them." Pritchett did testify that most of his jobs were done in Pittsylvania County.

Pritchett recovered the missing items after appellant's girlfriend, Cheyenne Sheets, showed him a pawn ticket for the items from Danville Pawn Shop, located in the City of Danville, dated July 28, 2012. After recovering the tools, Pritchett approached appellant about the stolen tools and appellant eventually admitted that he pawned them.

Sometime thereafter, Deputy Eastridge spoke with appellant, who again admitted that he pawned the tools. However, appellant told Deputy Eastridge that he spoke with Boyd who told appellant to pick up the tools, pawn them, and that they would split the money. Appellant told Deputy Eastridge that he got the tools from Boyd's backyard.

Boyd testified that he learned the tools were missing on or about August 20, 2012, when Sheets called him asking if he gave appellant tools to pawn. Boyd told Sheets that he had not, and she then told Boyd that she found a pawn ticket for tools that appellant said he got from Mr. Boyd and which Mr. Boyd told him to pawn. Mr. Boyd denied knowing of any tools or giving any to appellant to pawn.

Boyd further testified that appellant would have had access to the trailer with the tools in it during lunchtimes and on one Saturday when he worked alone after Boyd gave appellant the

_____

[2] Presumably, "the city" refers to the City of Danville, an independent city physically located within Pittsylvania County.

- 2 -

keys to the locked trailer sometime in July or August 2012. When asked where the trailer was when appellant worked alone on a Saturday, Boyd said the trailer was in Pittsylvania County. However, Boyd testified that Saturday was approximately two weeks before he knew Pritchett's tools were missing around August 20, 2012. Boyd said that he didn't "know exact dates" because it had been months. When asked to reconcile the fact that the pawn ticket was dated July 28, 2012, with the possibility that the tools went missing on a Saturday two weeks prior to August 20, 2012, Boyd admitted that he didn't know when the tools went missing and that they had already moved to another job when he learned the tools were missing.

Appellant also testified and admitted he pawned the tools because he had permission from Boyd to do so and he thought the tools belonged to Boyd. Appellant testified that he found the power tools in a building behind Boyd's house and that he and Boyd split the money from pawning the items. Appellant stated that he never saw the tools at Pritchett's work sites and never used tools like that when working for Pritchett.

After the March 8, 2013 bench trial, the trial court found appellant guilty of grand larceny after concluding venue was proper in Pittsylvania County. In denying appellant's motion to strike for improper venue, the trial court credited Boyd's testimony regarding the time frame and Pritchett's testimony that most of his jobs were done in Pittsylvania County.

On April 30, 2013, the trial court sentenced appellant to ten years' incarceration with all but six months suspended. This appeal followed.

## II. Analysis

Appellant asserts that the trial court erred in denying his motion to strike for improper venue. The prosecution of a criminal case shall be had in the county or city in which the offense was committed. Code § 19.2-244. For purposes of venue, the Supreme Court has identified larceny "as a continuing offense . . . based on the common law legal fiction that each time the

- 3 -

stolen goods are taken into a new jurisdiction, there is an illegal asportation and a new crime is committed, thereby allowing prosecution for the larceny in any jurisdiction to which the goods were taken." Gheorghiu v. Commonwealth, 280 Va. 678, 685, 701 S.E.2d 407, 411 (2010) (citing Strouther v. Commonwealth, 92 Va. 789, 791, 22 S.E. 852, 852 (1895)).

The burden is on the Commonwealth to prove venue by evidence which is either direct or circumstantial. Pollard v. Commonwealth, 220 Va. 723, 725, 261 S.E.2d 328, 330 (1980) (citing Keesee v. Commonwealth, 216 Va. 174, 175, 217 S.E.2d 808, 809 (1975)). "Since venue does not represent an element of the offense, the Commonwealth need not prove it beyond a reasonable doubt." Taylor v. Commonwealth, 58 Va. App. 185, 190, 708 S.E.2d 241, 243 (2011) (citations omitted). Rather, the Commonwealth's evidence "must furnish the foundation for a 'strong presumption' that the offense was committed within the jurisdiction of the court." Pollard, 220 Va. at 725, 261 S.E.2d at 330 (citing Keesee, 216 Va. at 175, 217 S.E.2d at 810). "[V]enue has been sufficiently proven when its location is the only reasonable inference that can be drawn from the evidence." Randall v. Commonwealth, 183 Va. 182, 187, 31 S.E.2d 571, 573 (1944) (citing Hart v. Commonwealth, 131 Va. 726, 736, 109 S.E. 582, 585 (1921)).

This case resembles Pollard, in which the defendant was convicted of receiving stolen property. 220 Va. 723, 261 S.E.2d 328. There, defendant was observed driving his truck from his home in Henrico County to a rental store in Charlottesville carrying property resembling the missing items. Id. at 724, 261 S.E.2d at 329. Officers subsequently seized items from the rental store, including an air hammer owned by the City of Richmond and assigned to a City truck driven by defendant. Id. at 724-25, 261 S.E.2d at 329-30. Defendant admitted that he previously sold similar items to the rental store and that he obtained some of them from a dump in the City. Id. at 724, 261 S.E.2d at 329. At defendant's trial, the City custodian testified that he realized the air hammer was missing from defendant's truck sometime between December 1977 and

- 4 -

January 1978. Id. at 725, 261 S.E.2d at 330. Venue for receipt of stolen property is proper in the jurisdiction where the defendant receives the stolen property. Id. The trial court found that the Commonwealth sufficiently proved that venue was proper in the City of Richmond.

The Supreme Court reversed and remanded defendant's conviction, holding that the Commonwealth failed to prove that the defendant received the air hammer at issue in the City of Richmond. Id. at 726, 261 S.E.2d at 330. The Court noted that the only evidence as to venue proved that defendant possessed the air hammer in Charlottesville whenever he sold it to the rental store. Id. The Court disagreed with the Commonwealth's argument that the evidence indicating that the air hammer was City property provided a sufficient predicate from which the Court could infer that the stolen property was received in the City. Id. at 725, 261 S.E.2d at 330. To the contrary, the Court held that the record was "utterly insufficient to prove that the defendant received, or even possessed, the air hammer within the bounds of the trial court's jurisdiction." Id. at 725-26, 261 S.E.2d at 330.

The evidence as to venue in this case is overall vague and uncertain. Neither Pritchett nor Boyd knew when the tools went missing. When asked if the trailer was in Pittsylvania County when the stolen items went missing, Pritchett responded "I think so." However, Pritchett could not remember which job he was working when the tools went missing because he had "done so many [jobs] it[ was] hard to keep up with them." While most of Pritchett's jobs were done in Pittsylvania County, appellant only had access to the trailer where the tools were kept when alone at some lunchtimes and on a particular Saturday, and there was conflicting evidence as to where the job was located and when the Saturday appellant was left alone occurred. Pritchett testified it was on a job at GW high school "in the City" but did not know when that particular job or Saturday occurred.

Boyd, on the other hand, testified that appellant was alone on a Saturday sometime in July or August 2012, about two weeks before he learned the tools were missing, and that the trailer was located in Pittsylvania County at that time. Boyd testified that he didn't "know exact dates" because it had been months, but agreed that it "seem[ed] approximately right" that he learned the tools were missing on August 20, 2012. Boyd ultimately admitted that he did not know when the tools went missing when asked how the tools could have gone missing on a Saturday two weeks prior to August 20, 2012, if the pawn ticket showed they were pawned over three weeks earlier on July 28, 2012. Appellant's testimony did not shed any additional light on the jurisdiction in which he stole the tools, as he testified that he took the tools, with permission, from Boyd's house and there was no testimony as to where Boyd's house was located.

In fact, the only direct evidence as to venue was the pawn ticket itself, which proved that appellant possessed the items in the City of Danville, and appellant's admission that he did in fact pawn them there. In Pollard, the evidence showed that defendant possessed the stolen air hammer, which was City property, in Charlottesville. However, there was no direct or circumstantial evidence that defendant received the air hammer in the City of Richmond. 220 Va. at 726, 261 S.E.2d at 330. Likewise in this case, while there was ample evidence that appellant frequently worked in Pittsylvania, that the tools were frequently located in Pittsylvania County, and that, on at least one occasion, appellant was left alone on a job site in Pittsylvania County, the evidence was "utterly insufficient" to prove that appellant ever possessed the stolen tools there. See id. at 725-26, 261 S.E.2d at 330. There certainly was not enough evidence to create a strong presumption that appellant stole or possessed the tools in Pittsylvania County.

For these reasons, we hold that the trial court erred in holding that the Commonwealth proved venue in Pittsylvania County and we reverse appellant's conviction and remand the case to the trial court for further proceedings,[3] if the Commonwealth be so advised.

<div align="right">Reversed and remanded.</div>

---

[3] "'Where venue was improper, this Court should remand the case for a new trial in an appropriate venue.'" Bonner v. Commonwealth, 62 Va. App. 206, 216, 745 S.E.2d 162, 167 (2013) (quoting Taylor v. Commonwealth, 58 Va. App. 185, 193, 708 S.E.2d 241, 245 (2011)).