**PUBLISHED**

Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston,
            McCullough, Huff and Chafin
Argued at Richmond, Virginia


LARWAN BADRU BONNER

                                                        OPINION BY
v.      Record No. 0565-11-2                    JUDGE ROBERT J. HUMPHREYS
                                                        JULY 23, 2013
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
Sam Campbell, Judge

Lawrence Anthony Drombetta, III (Charles C. Cosby, Jr., on brief),
for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Larwan Badru Bonner ("Bonner") appeals his conviction in the Circuit Court of

Brunswick County ("trial court") for altering the serial number of a firearm in violation of Code

§ 18.2-311.1.[1] On appeal to a three-judge panel of this Court, Bonner argued that the trial "court

erred in denying [his] motion to strike the [Code] § 18.2-311.1 charge involving the absence of a

serial number due to improper venue." A divided panel of this Court reversed the conviction

based on a failure by the Commonwealth to establish that the Circuit Court of Brunswick County

was a proper venue for his trial on this offense. Bonner v. Commonwealth, 61 Va. App. 247,

734 S.E.2d 692 (2012). The Commonwealth, by the Attorney General of Virginia, filed a

---

[1] Bonner was also convicted of using threatening language over the phone in violation of
Code § 18.2-427 and possession of a firearm by a convicted felon in violation of Code
§ 18.2-308.2; however, those convictions are not before the Court in the instant appeal.

petition requesting a rehearing *en banc*. This Court granted the Commonwealth's petition, staying the execution of the judgment of the panel opinion. Bonner v. Commonwealth, 61 Va. App. 430, 737 S.E.2d 46 (2013). Upon further review, we find that the Commonwealth failed to establish that venue for the trial of this offense was proper in Brunswick County, and so we reverse the conviction of altering the serial number of a firearm and remand to the trial court for further proceedings consistent with this opinion, if the Commonwealth be so advised.

## I. Background

The facts relevant to this appeal are as follows. On October 29, 2009, Bonner made a threatening phone call to Erica Seay ("Seay"). At the time, Seay was in a house that is located in Brunswick County. Seay contacted the police and, together, they set up a meeting between Seay and Bonner at the Circle D,[2] which is also located in Brunswick County.

Meanwhile, Bonner met with Brian Wyatt ("Wyatt") and Wyatt's girlfriend, Diane Branzelle ("Branzelle"), at Wyatt's house.[3] Together, they drove to Bonner's house, which is located in Dinwiddie County, and then to the Circle D where they waited to meet Seay. The police arrived and arrested Bonner in the parking lot of the Circle D, and, incident to the arrest, they recovered the handgun that is at issue in this case. At that time, the serial number of the handgun had already been filed down.

The evidence related to the handgun in this record is scant. There was no testimony as to who had filed down the serial number, when it was obliterated, or where the removal was done. Instead, the record reveals only that Seay had seen Bonner with the handgun previously on September 18 at his home in Dinwiddie. However, Seay was unable to state whether the

---

[2] The record is replete with references to the Circle D and "Davis's Truck Stop" or the "Davis Truck Stop." Apparently, "Davis's Truck Stop" or the "Davis Truck Stop" replaced the Circle D, but as it is clear that they are the same location, this opinion will reference the location simply as the Circle D.

[3] The record is silent as to the location of Wyatt's house.

handgun had the serial number removed at that point or not. Additionally, Branzelle testified that she noticed the gun wedged between the passenger seat and the center console of the car while they were waiting at the Circle D on the night of the arrest. Branzelle testified that she was familiar with the gun, as she had seen it previously in Bonner's father's truck, and it did not have a serial number on it at that point. However, the record before us does not establish the date on which she had seen the gun previously, what jurisdiction she was in on that occasion, or who owned the handgun.

## II. Analysis

A basic principle of law is that a civil or criminal action should be decided by a court in the locality where the civil dispute or criminal offense occurred and where a jury to resolve the issue may be drawn. This bedrock common law principle is expressed in the concept of venue and has long been recognized in Virginia. See Richardson v. Commonwealth, 80 Va. 124 (1885).

In a criminal prosecution, it is the Commonwealth's burden to establish venue. Pollard v. Commonwealth, 220 Va. 723, 725, 261 S.E.2d 328, 330 (1980). "Proof of venue 'is not a part of the crime.' Thus, the prosecution need not 'prove where the crime occurred beyond a reasonable doubt, since venue is not a substantive element of a crime.'" Morris v. Commonwealth, 51 Va. App. 459, 469, 658 S.E.2d 708, 712-13 (2008) (quoting Randall v. Commonwealth, 183 Va. 182, 187, 31 S.E.2d 571, 573 (1944); United States v. Griley, 814 F.2d 967, 973 (4th Cir. 1987)). Instead, to establish venue the Commonwealth need only "produce evidence sufficient to give rise to a 'strong presumption' that the offense was committed within the jurisdiction of the court." Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990). "The Commonwealth may prove venue by either direct or circumstantial evidence. In either case, the evidence must be sufficient to present a 'strong presumption that the offense was committed

within the jurisdiction of the Court.'" Davis v. Commonwealth, 14 Va. App. 709, 711, 419 S.E.2d 285, 287 (1992) (quoting Pollard, 220 Va. at 725, 261 S.E.2d at 330).

On appeal, an appellate court's responsibility when reviewing an issue of venue is "to determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Foster-Zahid v. Commonwealth, 23 Va. App. 430, 442, 477 S.E.2d 759, 765 (1996) (quoting Cheng, 240 Va. at 36, 393 S.E.2d at 604). Furthermore, "[w]e consider whether the Commonwealth proved venue when viewing the evidence 'in the light most favorable to the Commonwealth.'" Taylor v. Commonwealth, 58 Va. App. 185, 190, 708 S.E.2d 241, 243 (2011) (quoting Cheng, 240 Va. at 36, 393 S.E.2d at 604).

Before we can determine whether the Commonwealth met its burden in establishing a strong presumption that the offense was committed in the jurisdiction of the trial court, we must establish in the abstract where a proper venue is for the offense of altering the serial number of a firearm. Generally, the General Assembly has provided that venue in the Commonwealth "shall be had in the county or city in which the offense was committed." Code § 19.2-244. In other words, venue for a criminal prosecution will generally be proper wherever any element of the offense occurs. However, for certain specific offenses, the legislature has seen fit to allow for venue in other jurisdictions in which it may not ordinarily lie. See e.g. Code §§ 18.2-83, 18.2-115, 18.2-118, 18.2-178, 18.2-186, 18.2-326, 18.2-359, 18.2-362. In the absence of such a provision, Code § 19.2-244 dictates the proper venue for an offense. Such is the case here. "Application of this statute requires a determination of where a specific crime was 'committed.' This determination is straightforward when the crime is a discrete act." Kelso v. Commonwealth, 282 Va. 134, 137, 710 S.E.2d 470, 472 (2011). However, when a crime

constitutes a continuing offense, venue may be proper in more than one jurisdiction.  See

Thomas v. Commonwealth, 38 Va. App. 319, 324, 563 S.E.2d 406, 409 (2002).

> "A continuing offense is a continuous, unlawful act or series of
> acts set on foot by a single impulse and operated by an
> unintermittent force, however long a time it may occupy.  Where
> such an act or series of acts runs through several jurisdictions, the
> offense is committed and cognizable in each."

Id. (quoting United States v. Midstate Horticultural Company, 306 U.S. 161, 166 (1939)).

The offense of altering the serial number of a firearm is set forth under Code

§ 18.2-311.1, which states that

> [a]ny person, . . . who . . . intentionally removes, defaces, alters,
> changes, destroys or obliterates in any manner or way or who . . .
> causes to be removed, defaced, altered, changed, destroyed or
> obliterated in any manner or way the name of the . . . or serial
> number . . . on any pistol . . . shall be guilty of a Class 1
> misdemeanor.

By the plain language of the statute, it is clear that this offense constitutes a discrete act.  The

statute requires only that a person intentionally remove, deface, alter, change, destroy, or

obliterate the serial number of the pistol in order for the elements of the offense to be completed.

Once any of these goals has been achieved, the crime is complete.  In other words, the statute

does *not* contain "'a continuous, unlawful act or series of acts set on foot by a single impulse and

operated by an unintermittent force.'"  Thomas, 38 Va. App. at 324, 563 S.E.2d at 409 (quoting

Midstate Horticultural Company, 306 U.S. at 166).

In contrast, courts in the Commonwealth have consistently held that larceny is a

continuing offense.  See Gheorghiu v. Commonwealth, 280 Va. 678, 685, 701 S.E.2d 407, 411

(2010).  This is "based on the common law legal fiction that each time the stolen goods are taken

into a new jurisdiction, there is an illegal asportation and a new crime is committed."  Id.  Thus,

in prosecutions for the offense of larceny, venue is proper in any jurisdiction in which the stolen

goods are taken because one of the required elements of larceny, the asportation of the stolen

property from its original location, is ongoing. Likewise, conspiracy constitutes a continuing offense, and therefore "venue is proper in any city or county where an act in furtherance of the conspiracy took place, as well as the place where the conspiracy was entered into." Brown v. Commonwealth, 10 Va. App. 73, 80-81, 390 S.E.2d 386, 390 (1990). However, altering the serial number of a firearm is not analogous to these offenses. There is no element of this offense involving conduct that is ongoing in nature or conduct that in and of itself constitutes a new offense.

Even so, the Commonwealth argues that, "depending on the nature of a particular crime, there may be a distinction between the locus of criminal conduct and where its effect occurs. For purposes of venue, these offenses can be considered 'continuing' or 'transitory.'" As in the case of altering the serial number of a firearm, the Commonwealth reasons that the effect of the crime would be felt anywhere the firearm is located, as the harm the statute intends to prevent is the inability to trace the firearm. In support of this argument, the Commonwealth cites to Kelso, in which the Supreme Court recognized "venue is proper in the jurisdiction where the direct and immediate result of an illegal act occurred, even if the illegal act causing the injury occurred in another jurisdiction," Kelso, 282 Va. at 138, 710 S.E.2d at 473, and to Gregory v. Commonwealth, 5 Va. App. 89, 360 S.E.2d 858 (1987), in which this Court reasoned that "[i]t has long been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which the evil is the fruit." Id. at 94, 360 S.E.2d at 861.

However, the Supreme Court in Kelso did not expand the scope of venue in the manner suggested by the Commonwealth. The Attorney General's argument ignores the context of the holding in which those statements were made. In Kelso, the charge was causing a juvenile to assist in the distribution of marijuana in violation of Code § 18.2-255(A)(ii). As the Supreme

Court noted, "one of the acts which must occur for conviction is distribution of the contraband by the juvenile to a third party. Under these circumstances, the place where that act occurred is an appropriate venue for prosecution." Kelso, 282 Va. at 138, 710 S.E.2d at 473. Thus, under the holding in Kelso, venue is proper where one of the elements of the offense occurred. Similarly, the offense charged in Gregory was one of those discussed above that involved an offense for which the General Assembly specifically provided for venue in a place other than where venue would ordinarily lie.[4]

Indeed, the Commonwealth's argument that venue lies wherever some evil traceable to a crime occurs, if followed to its logical conclusion would result in the complete frustration of the general venue statute. Therefore, it is apparent that the General Assembly clearly does not share the Attorney General's interpretation of existing law. Under the Commonwealth's theory, there would be no need for the legislature to include special venue statutes in the offenses that currently include such provisions. The offense of making threats to bomb a building under Code § 18.2-83 is illustrative. This statute criminalizes "[a]ny person . . . who makes and communicates to another by any means any threat to bomb, burn, destroy or in any manner damage any place of assembly, building or other structure, or any means of transportation." Code § 18.2-83(A). The statute goes on to state that "[a] violation of this section may be prosecuted either in the jurisdiction from which the communication was made or in the jurisdiction where the communication was received." Code § 18.2-83(B). This offense, like the alteration of a firearm, is a discrete act. However, the effect of the act is clearly felt where the threat is received. Thus, under the Commonwealth's theory, there would be no need for the

---

[4] A more accurate construction of Kelso and Gregory, is that the "evil" caused by the criminal actions in those cases occurred where either an element of the offense occurred or where the General Assembly made specific provision for venue to exist. The record in this case supports neither situation.

legislature to specifically provide that the offense may be prosecuted where the threat was received. However, that is exactly what the legislature saw fit to do.

Having concluded that Code § 18.2-311.1 is a discrete rather than a continuing offense, we now turn to the issue of whether venue was proper in this case. That is, based on the evidence in the record before us, did the trial court err in finding that the Commonwealth established a strong presumption that the removal, defacement, alteration, change, destruction or obliteration of the serial number occurred in Brunswick County. In this case, we hold that it did.

It is clear from the record that Bonner did not file down the serial number while he was waiting at the Circle D in Brunswick County on the night in question. Both Seay and Branzelle testified that they had seen Bonner with the gun on different occasions prior to the night of his arrest. Seay was able to place the gun with Bonner at his residence in Dinwiddie County prior to the evening in question, and Branzelle testified that the handgun's serial number had already been removed prior to the arrest, although the date and location of that occurrence are not part of the record. However, there was no testimony that Bonner was the one who filed down the serial number, let alone where that discrete act occurred. While the Commonwealth need only prove a strong presumption of venue, as opposed to the much more stringent "beyond a reasonable doubt standard" necessary for conviction, there is still insufficient evidence in the record to sustain even this standard.[5] Therefore, we find that the trial court erred in finding that the Commonwealth established that venue for the trial of this offense was proper in Brunswick County.

The Commonwealth argues that this is an absurd result and points to our oft-cited canon of statutory construction that "'the plain, obvious, and rational meaning of a statute is to be

---

[5] We reiterate that the only issue on appeal relates to the finding of venue, and not to the sufficiency of the evidence for the conviction of altering the serial number of a firearm itself.

preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results.'" Davis v. County of Fairfax, 282 Va. 23, 28, 710 S.E.2d 466, 468 (2011) (quoting Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007)). Our interpretation of the venue statute is based on its plain language. While this may create difficulty in some cases in establishing venue for this offense, difficulty is not absurdity. The legislature could have easily created a special venue provision for this offense establishing venue wherever the firearm is located, or simply criminalized the possession of a firearm that has an altered serial number. However, that is not what the legislature has done, and thus, our holding is faithful to the canon of statutory construction cited by the Commonwealth.

### III. Conclusion

For aforementioned reasons, we hold today that the trial court erred in finding venue proper for Bonner's charge of altering the serial number of a firearm. Therefore, we reverse Bonner's conviction of that offense, and remand the case to the trial court for further proceedings, including trial in a proper venue if the Commonwealth be so advised.[6]

Reversed and remanded.

---

[6] "Where venue was improper, this Court should remand the case for a new trial in an appropriate venue." Taylor, 58 Va. App. at 193, 708 S.E.2d at 245.

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **5th** *day of* **February, 2013**.

Larwan Badru Bonner,                                                                                    Appellant,

against          Record No. 0565-11-2
                 Circuit Court Nos. CR10000148-00 through CR10000148-02

Commonwealth of Virginia,                                                                          Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston, McCullough, Huff and Chafin


On December 21, 2012 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on December 11, 2012, and grant a rehearing *en banc* on the issue raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue raised therein, the mandate entered herein on December 11, 2012 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of

this Court.  The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe

Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: _____

Deputy Clerk

---

[1]  The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present:  Judges Frank, Humphreys and Huff
Argued at Richmond, Virginia


LARWAN BADRU BONNER

                                                    OPINION BY
v.      Record No. 0565-11-2              JUDGE ROBERT J. HUMPHREYS
                                                    DECEMBER 11, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
Sam Campbell, Judge

Charles C. Cosby, Jr., for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli, II,
Attorney General, on brief), for appellee.


Larwan Badru Bonner ("Bonner") was convicted in the Circuit Court of Brunswick

County ("trial court") for altering the serial number of a firearm in violation of Code

§ 18.2-311.1, using threatening language over the phone in violation of Code § 18.2-427, and

possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.[1]  On appeal, he

contends that the trial "court erred in denying [his] motion to strike the [Code] § 18.2-311.1

charge involving the absence of a serial number due to improper venue."  Because we find that

the Commonwealth did not properly establish venue for this charge, we reverse the conviction,

and remand the case for a new trial in a proper venue if the Commonwealth is so advised.

I.  Background

On October 29, 2009, Bonner, a resident of Dinwiddie County, called E.S. and demanded

that she repay him $70 that he had paid for dinner the night before.  During the phone call,

_____

[1] This appeal only involves a challenge to the conviction under Code § 18.2-311.1 for
altering the serial number of a firearm.  The remaining convictions for violating Code
§§ 18.2-308.2 and -427 are not before this Court.

Bonner was loud and angry, and he threatened to "'F' [E.S.] and everybody else in the house up." At the time of the call, E.S. was in a house in Brunswick County with her three children, the father of her children, and his mother, father, and grandmother. After the call ended, E.S. contacted the police, and together, they set up a meeting between E.S. and Bonner at the Davis Truck Stop in Brunswick County.

Meanwhile, Bonner met Brian Wyatt ("Wyatt") and his girlfriend, Diane Branzelle ("Branzelle"), at Wyatt's house.[2] Together, the three of them drove to Bonner's house in Dinwiddie County and then to the Davis Truck Stop. Bonner informed Branzelle and Wyatt that they needed to wait at the Davis Truck Stop, because he was going to pick up some money from the father of E.S.'s children. While they were waiting, Branzelle leaned forward and noticed that Bonner had his arm rested on a handgun that was wedged between his seat and the center console of the car.

Eventually, the police arrived at the Davis Truck Stop and arrested Bonner. Incident to the arrest, they recovered the handgun from the vehicle. The police observed that the serial number of the gun was filed down and rendered unreadable.

There was no testimony as to how or where the serial number had been filed down. Instead, the only testimony at trial regarding the gun was that E.S. had seen Bonner with the gun on September 18 at his home in Dinwiddie. However, she was unsure whether the serial number had been removed from the gun at that point. Additionally, Branzelle testified that she had seen the gun on a different occasion, which was prior to October 29, 2009, and it did not have a serial number on it at that point. Branzelle did not testify as to the location of that instance.

At trial, Bonner moved to strike the charge of altering the serial number of a firearm, arguing that the Commonwealth had not met its burden in establishing that venue for the charge

---

[2] The record is silent as to the location of Wyatt's house.

was proper in Brunswick County. The trial court denied his motion to strike, and subsequently found him guilty of the offense. Bonner then noted this appeal.

## II. Analysis

When an appeal involves an issue of venue, we review the record "to determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" Foster-Zahid v. Commonwealth, 23 Va. App. 430, 442, 477 S.E.2d 759, 765 (1996) (quoting Cheng v. Commonwealth, 240 Va. 26, 36, 393 S.E.2d 599, 604 (1990)). In a criminal prosecution, it is the Commonwealth's burden to establish venue. Pollard v. Commonwealth, 220 Va. 723, 725, 261 S.E.2d 328, 330 (1980). "The Commonwealth may prove venue by either direct or circumstantial evidence. In either case, the evidence must be sufficient to present a 'strong presumption that the offense was committed within the jurisdiction of the Court.'" Davis v. Commonwealth, 14 Va. App. 709, 711, 419 S.E.2d 285, 287 (1992) (quoting Pollard, 220 Va. at 725, 261 S.E.2d at 330).

While the General Assembly has created specific venue provisions for some offenses, see e.g. Code §§ 18.2-115, 18.2-118, 18.2-178, 18.2-186, 18.2-326, altering the serial number of a firearm under Code § 18.2-311.1 is not one of them. Therefore we must look to Code § 19.2-244, the general venue statute in the Commonwealth, for the venue requirements applicable to the offense involved in this case. Code § 19.2-244 states in relevant part "[e]xcept as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." "Application of this statute requires a determination of where a specific crime was 'committed.' This determination is straightforward when the crime is a discrete act." Kelso v. Commonwealth, 282 Va. 134, 137, 710 S.E.2d 470, 472 (2011).

In other words, venue for prosecution ordinarily lies where one or more elements of the offense charged took place. Furthermore, when a crime constitutes a continuing offense, venue may be proper in more than one jurisdiction. See Thomas v. Commonwealth, 38 Va. App. 319, 324, 563 S.E.2d 406, 409 (2002).

> "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each."

Id. (quoting United States v. Midstate Horticultural Company, 306 U.S. 161, 166 (1939)). Larceny, for example, is a continuing offense, and thus, venue is proper for any jurisdiction in which the thief transports or possesses the stolen goods. Doane v. Commonwealth, 218 Va. 500, 502, 237 S.E.2d 797, 798 (1977); see also Gheorghiu v. Commonwealth, 280 Va. 678, 685, 701 S.E.2d 407, 411 (2010) ("We have identified larceny as a continuing offense for venue purposes based on the common law legal fiction that each time the stolen goods are taken into a new jurisdiction, there is an illegal asportation and a new crime is committed, thereby allowing prosecution for the larceny in any jurisdiction to which the goods were taken.").

While not conceding the point, the Commonwealth argues that even if the record is silent as to the specific location where the serial number on the weapon was defaced, nevertheless venue was proper in Brunswick County because a violation of Code § 18.2-311.1 constitutes a continuing offense and the record is clear that Bonner possessed the weapon in that county. The Commonwealth's argument, in essence, is that, since the alteration of a serial number allows the possessor of the weapon potentially to use the weapon in committing other crimes without fear of the weapon being traced back to him, the offense is continuing in nature. We disagree. Code § 18.2-311.1 states, in relevant part, that

> [a]ny person, . . . who . . . intentionally removes, defaces, alters, changes, destroys or obliterates in any manner or way or who . . .

> causes to be removed, defaced, altered, changed, destroyed or obliterated in any manner or way the name of the . . . serial number . . . on any pistol . . . shall be guilty of a Class 1 misdemeanor.

Unlike the asportation element of larceny, there is no element of Code § 18.2-311.1 that is ongoing in nature such as to permit a similar legal fiction that a new offense has occurred in every jurisdiction in which the weapon is possessed. Under the plain language of the statute, the offense is complete once the person tampers with the serial number of the firearm in the manner or to the extent proscribed by the statute. Thus, the offense constitutes a discrete act rather than a continuing offense.

The Commonwealth argues that this construction of the venue requirements for Code § 18.2-311.1 will make prosecution more difficult when the location of alteration is unknown. Whatever the policy merits of the Commonwealth's argument, it is best addressed by the General Assembly. This Court must follow the plain meaning of the statute and may not rewrite it.

> "The duty of this court is not to make law, but to construe it; not to wrest its letter from its plain meaning in order to conform to what is conceived to be its spirit, in order to subserve and promote some principle of justice and equality which it is claimed the letter of the law has violated. It is our duty to take the words which the legislature has seen fit to employ and give to them their usual and ordinary signification, and having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution."

Temple v. Petersburg, 182 Va. 418, 423, 29 S.E.2d 357, 359 (1944) (quoting Commonwealth v. Sanderson, 170 Va. 33, 38-39, 195 S.E. 516, 519 (1938)).

Since Code § 18.2-311.1 does not constitute a continuing offense, we now turn to the issue of whether the trial court erred in finding the Commonwealth met its burden in establishing a strong presumption that the offense was committed in Brunswick County. The record indicates that both E.S. and Branzelle had seen Bonner with the gun on different occasions prior to the night he was arrested. E.S. testified that at that previous occasion, Bonner had the gun with him

at his house in Dinwiddie County. Branzelle, on the other hand, did not indicate the jurisdiction in which she had previously seen the gun, but she testified that the serial number had already been removed. On the night of his arrest, Bonner drove with Branzelle and Wyatt from Wyatt's house to Bonner's house in Dinwiddie County before proceeding to the Davis Truck Stop in Brunswick County. There was no testimony that Bonner altered the serial number in any manner during that trip; rather, Branzelle testified only that she noticed the gun when she leaned forward and saw the gun wedged between the seat and console. Combined with Branzelle's other testimony, it is clear that Bonner had altered the serial number prior to the trip. As Bonner lives in Dinwiddie County, and the record only indicates that he entered Brunswick County in order to confront E.S., there is no evidence whatsoever in the record before us that Bonner removed the serial number of the gun in Brunswick County.

The dissent concedes that the serial number may have been altered outside of Brunswick County, but nevertheless reaches the conclusion that venue is proper in this case because "the direct and immediate impact of the offense occurred in Brunswick" County. We reject this theory because if we were to accept this principle as broadly as the dissent does, the general venue statute found in Code § 19.2-244 would be unnecessary. Carried to its logical conclusion, the test for venue for any criminal offense would be proper in any jurisdiction regardless of where the elements of the offense were actually committed so long as one can point to some "direct and immediate impact" of the offense in that jurisdiction.

In support of its position, the dissent relies primarily upon two cases: Gregory v. Commonwealth, 5 Va. App. 89, 360 S.E.2d 858 (1987), aff'd, 237 Va. 354, 377 S.E.2d 405 (1989), and Foster-Zahid, 23 Va. App. 430, 477 S.E.2d 759. However, these cases are easily distinguishable from, and inapplicable to, this case. In Gregory, the appellant was convicted of unlawfully and feloniously removing a tractor and trailer from the state upon which there was a

- 6 -

lien and disposing of it without the written consent of the lienor in violation of Code § 18.2-115. That statute included a specific provision for venue. Specifically, "Code § 18.2-115 . . . provide[d] that: '[t]he venue of prosecutions against persons fraudulently removing any such property, including motor vehicles, from the State shall be the county or city in which such property or motor vehicle was purchased or in which the accused last had a legal residence.'" Gregory, 5 Va. App. at 92, 360 S.E.2d at 860 (quoting Code § 18.2-115). As the appellant's last legal residence was in the jurisdiction where the charge was instituted, this Court found that venue was proper and the Supreme Court affirmed that decision. Gregory, 237 Va. 354, 377 S.E.2d 405.

The dissent focuses on part of our reasoning from that case: "'[i]t has long been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which the evil is the fruit.'" Gregory, 5 Va. App. at 94, 360 S.E.2d at 861 (quoting Travelers Health Assoc. v. Commonwealth, 188 Va. 877, 892, 51 S.E.2d 263, 269 (1949)). However, the dissent fails to consider that this offense involved a crime where elements of the offense occurred outside of the state and the statute specifically provided that venue existed in a location other than where the crime occurred.[3] "'[I]n the absence of a constitutional limitation, it is generally held that the Legislature has power to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed.'" Foster-Zahid, 23 Va. App. at 442, 477 S.E.2d at 765 (quoting Howell v. Commonwealth, 187 Va. 34, 40-41, 46 S.E.2d 37, 40 (1948)). As already

---

[3] The General Assembly can certainly authorize prosecution of an offense that occurs in part outside of the Commonwealth's territorial borders when its effects are felt within the Commonwealth. Such authority is inherent in a state's sovereign power. However, this is a wholly different issue than venue, which is simply the concept of the legally proper place where a particular case should be filed and disposed of.

noted, the legislature included no specific venue provision applicable to Code § 18.2-311.1, therefore the holding of Gregory is inapplicable to this case.

In Foster-Zahid, the appellant was convicted of custodial interference in violation of Code § 18.2-49.1(A). That statute criminalizes the withholding of the child from the custodial parent, and thus, the offense is necessarily committed where the custodial parent resides. Therefore, in Foster-Zahid we held "[u]nder Code § 18.2-49.1(A), the General Assembly clearly provided that venue exists where the crime of custodial interference occurred, i.e., where the harm resulted as a direct and immediate consequence of the violation of the court order." Id. As a result, we held that venue was proper where the custodial parent resided since that is the location at which the child was withheld from the custodial parent. Code § 18.2-311.1 is distinguishable from Code § 18.2-49.1(A) in that in this case, the crime, and thus the harm, is complete when and where the serial number of the firearm has been altered. At that point, any attempt to identify the firearm by its serial number has been impeded. Thus, Foster-Zahid does not control our holding today. While the dissent is certainly correct that a firearm with an altered or defaced serial number may be used to commit other offenses that themselves result in direct and immediate consequences in other jurisdictions throughout the Commonwealth, the legislative scheme currently contemplates that each charged offense is subject to an individualized determination of venue.

### III. Conclusion

For the reasons stated, we hold that the trial court erred in concluding that the evidence was sufficient to establish that venue was proper in Brunswick County. We therefore reverse Bonner's conviction for altering the serial number of a firearm in violation of Code § 18.2-311.1 and remand this case to the trial court for further proceedings including a new trial in a circuit

court with geographical jurisdiction over the trial of this offense if the Commonwealth be so advised.

Reversed and remanded.

Frank, J., dissenting.

I respectfully dissent and believe venue was proper in Brunswick County.

Application of Code § 19.2-244 requires a determination of where a specific crime was "committed." This determination is straightforward when the crime is a discrete act. For example, rape is a discrete act which when completed constitutes the commission of the crime.

However, a crime committed in one jurisdiction may have a direct and immediate result in another jurisdiction. Gregory v. Commonwealth, 237 Va. 354, 355, 377 S.E.2d 405, 406 (1989); see also United States v. Blecker, 657 F.2d 629, 632 (4th Cir. 1981) (explaining that when a statute defining a substantive offense does not indicate where the place of committing the crime is to be, the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it).

In Gregory v. Commonwealth, 5 Va. App. 89, 360 S.E.2d 858 (1987), aff'd, 237 Va. 354, 377 S.E.2d 405 (1989), Gregory obtained a loan from a bank, which was secured by a lien on his tractor trailer. The loan agreement prohibited Gregory from selling the vehicle without the bank's consent. Gregory sold the trailer in another state after it broke down. He was charged with fraudulently selling the vehicle pursuant to Code § 18.2-115 and tried for the offense in Botetourt County, Virginia. Id. at 91, 360 S.E.2d at 859.

Gregory argued the offense was completed outside of the Commonwealth. We held the evil that Code § 18.2-115 sought to prevent, i.e., the economic injury to the lienholder by removing the secured property from the Commonwealth and thus preventing the lienholder from enforcing the lien, occurred in Botetourt County. Id. at 94, 360 S.E.2d at 861. "'It has been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which the evil is the fruit.'" Id. (quoting Travelers Health Assoc. v. Commonwealth, 188 Va. 877, 892, 51 S.E.2d

- 10 -

263, 269 (1949)). "Where harm is caused in Virginia by criminal acts partially committed within this Commonwealth, such acts can be prosecuted here." Id.

The majority attempts to distinguish Gregory. We agree that Code § 18.2-115 provides that venue "shall be the county or city in which said property or motor vehicle was purchased or in which the accused last had a legal residence." However, I find Gregory persuasive. The statutory venue language and the Gregory opinion underscore the concept that "a person may be charged in the place where evil results." 5 Va. App. at 94, 360 S.E.2d at 861.

Foster-Zahid v. Commonwealth, 23 Va. App. 430, 477 S.E.2d 759 (1996), is also instructive. The mother, pursuant to a custody/visitation order of the Fairfax Juvenile and Domestic Relations District Court, had visitation with her son in Wisconsin. Id. at 434, 477 S.E.2d at 761. She failed to return the child as agreed, and ultimately absconded with him to California. Appellant was charged with parental abduction and tried in Fairfax. Id. at 435, 477 S.E.2d at 761.

The issue was whether Fairfax was the proper venue. We held that it was.

> The gravamen of the offense is the withholding of the child from the custodial parent outside the Commonwealth. The clear intent of the statute is to punish more severely those who withhold a child from its rightful custodian when the detention is accomplished outside of Virginia, thereby further restricting the custodial parent's ability to retrieve the child.

Id. at 437, 477 S.E.2d at 762 (emphasis omitted). Citing Gregory, we held that appellant's failure to return the child to the custodial parent in Fairfax produced the harm the statute intended to prevent. Id. at 440, 477 S.E.2d at 764.

It is interesting to note in Foster-Zahid, we cited Gregory to support the conclusion that the evil occurred in the Commonwealth by "further restricting the custodial parent's ability to retrieve the child." Foster-Zahid, 23 Va. App. at 437, 477 S.E.2d at 762. If the Gregory decision was limited to the statutory venue language, as the majority suggests, Gregory would have no

- 11 -

bearing on <u>Foster-Zahid</u>. Again, the majority seeks to distinguish <u>Foster-Zahid</u> as it must. The majority contends that Code § 18.2-311.1 is distinguishable from Code § 18.2-49.1(A)[4] in that the harm, and thus the crime, is complete once the serial number of the firearm had been altered. I disagree. The fact that the crime has been completed is not relevant to an analysis of where the evil occurred. In <u>Gregory</u>, the offense was complete when the perpetrator sold the trailer in another state. In <u>Foster-Zahid</u>, the offense was complete when the defendant withheld the child out of state.

I find the purpose behind prohibiting the alteration or obliteration of a serial number on a weapon instructive. A serial number identifies the weapon. By obscuring that number, one obscures the identification of the weapon and the owner. The number serves law enforcement interest by enabling them to trace and identify the owner and source.

As the United States Court of Appeals found in <u>United States v. Marzzarella</u>, 614 F.3d 85 (3d Cir. 2010):

> Firearms without serial numbers are of particular value to those engaged in illicit activity because the absence of serial numbers helps shield recovered firearms and their possessors from identification. Their prevalence, therefore, makes it more difficult for law enforcement to gather information on firearms recovered in crimes. Accordingly, preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or important interest.

<u>Id.</u> at 98 (citation omitted).

---

[4] Code § 18.2-49.1(A) provides:

> Any person who knowingly, wrongfully and intentionally withholds a child from either of a child's parents or other legal guardian in a clear and significant violation of a court order respecting the custody or visitation of such child, provided such child is withheld outside of the Commonwealth, is guilty of a Class 6 felony.

Here, appellant telephoned E.S. threatening to "F--- [her] up" and telling her that everyone in her house was "going to be in a body bag." Appellant had fired a gun within the last month in E.S.'s presence, and she was afraid he would keep his deadly threat. Appellant believed E.S. would meet him at the gas station, and he armed himself with a weapon with the serial number removed.

Appellant had threatened to commit murder. By eliminating the serial number, appellant effectively hampered any ensuing police investigation. Further, appellant is a convicted felon and his possession of a weapon is a separate felony offense. By removing the serial number, appellant made it more difficult for the weapon to be traced to him. See Marzzarella, 614 F.3d at 98 (discussing the substantial law enforcement interest in enabling weapons tracing via serial numbers). While obliteration of the serial number may have occurred outside of Brunswick, the evil Code § 18.2-311.1 sought to prevent occurred in Brunswick because several gun-related offenses occurred there necessitating an investigation in that county. Thus, the direct and immediate impact of the offense occurred in Brunswick and the trial court correctly found venue was proper in that county.

I would conclude there was sufficient evidence to give rise to a "strong presumption" that venue was proper in Brunswick County and would affirm the judgment of the trial court.