COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, AtLee and Ortiz
Argued at Fairfax, Virginia


ANTHONY WAYNE JONES

                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0374-24-4           JUDGE RICHARD Y. ATLEE, JR.
                                      DECEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PAGE COUNTY
Andrew S. Baugher, Judge

David A. Downes for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Anthony Wayne Jones challenges his conviction for possession of psilocyn, in violation

of Code § 18.2-250. On appeal, Jones argues that the evidence was insufficient to prove that he

constructively possessed the psilocyn. Specifically, he contends that the evidence was

insufficient to show both that he had dominion and control over the psilocyn and that he had

knowledge of its nature and character. He also argues that the evidence was insufficient to prove

that he possessed the psilocyn in Page County. For the reasons below, we disagree and affirm

the trial court's decision.

I. BACKGROUND

"On appeal, we state the facts in the light most favorable to the Commonwealth," the

prevailing party below. *Newsome v. Commonwealth*, 81 Va. App. 43, 48 (2024).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Anthony Jones and Ashley Griffin had a ten-year romantic relationship, during which they had a child together. After their relationship ended, they were living separately. Griffin was living in Page County with their child and her two other sons.

Griffin wanted all the children to spend the Father's Day weekend with Jones. The children left on Friday, and they spent Friday to Sunday with Jones. Griffin packed a book bag to send with the children, and she asked Jones to "make sure he sent all their clothes back." The children stayed at Jones's place on Friday, and then went to Jones's girlfriend's house in Front Royal, which is in Warren County, the next day.

On Sunday evening, while waiting for her children to be dropped off, Griffin went over to her neighbor's home. When the three kids were dropped off, they came over to the neighbor's place. Griffin testified at trial that Jones and his girlfriend dropped off the children on Sunday evening. Griffin acknowledged that she did not look outside, and she did not see Jones when the children were dropped off. But she explained that the standard operating procedure for Jones returning the children "was just to make sure they were back and on time." Griffin looked in the large compartment of the book bag, and it "looked empty," so she threw it in the closet when they got back to her house.

The following morning, Griffin dropped the kids off at her brother's house and went to work. When she got home, she discovered that Jones had been texting her oldest son. At trial, Griffin testified that Jones had taken a house key from the child during the weekend, and because they needed the key back, Jones "kept asking" the child if "they took their book bag home." Griffin told the child to confirm that they had the book bag. Jones then asked the child "to see if he had left anything in the book bag, to look for the key and a green and white pack of cigarettes." After looking at the text messages, Griffin went to the closet to get the book bag and started going through it. In the front zippered compartment of the book bag, Griffin found a

"green and white pack of cigarettes, Newports, full of Suboxone strips[;] a prescription bottle of heartburn medication with [Jones's] name on it[;] a bottle of Tylenol[;] and a bottle of liquid mushrooms."[1]

Griffin was so angry she "thought [she] was going to pass out," so she called her neighbor to come over. The neighbor advised her to call the police. Griffin set the items on her counter and took a photo of the items. She sent the picture to Jones and told him that she was going to call the police. Griffin's son also told Jones that Griffin was mad. Jones "kept calling and calling and calling."

Following the call to police, Officer Dustin Painter of the Luray Police Department went to Griffin's apartment to investigate. When he arrived, he saw Griffin and her neighbor. The book bag was laying on the kitchen table. Officer Painter observed "a green and white cigarette pack that had Suboxone strips inside of it, there was also a pill bottle with . . . Jones'[s] name on the pill bottle, and then there was . . . what [he] believed to be a psychedelic liquid." Testing later confirmed that the substance was psilocyn, a Schedule I controlled substance. Jones was charged in Page County with one count of possessing a Schedule I or II controlled substance.[2]

After the Commonwealth rested its case, Jones moved to strike the charge. He argued that there was "zero evidence" that he possessed "a controlled substance in Page County." He argued that the evidence showed that he was in Warren County, and there was "simply no evidence that [he] ever transported said bag to Page County, let alone ha[d] knowledge of it being in the bag, being aware of the contents of it." The trial court overruled the motion to strike.

---

[1] Jones's girlfriend smoked Newport cigarettes.

[2] Jones was also charged with three counts of abuse or neglect of a child and three counts of contributing to the delinquency of a minor. Those charges were dismissed and are not at issue in this appeal.

Jones did not present any evidence on his behalf, and he renewed his motion to strike. The trial court found Griffin "to be a very credible witness." Further, it found that it was a "reasonable inference" that Jones returned the children to Griffin as he had done in the past, "thus placing him in Page County with the children and the overnight backpack." Considering all the evidence, the court found "beyond a reasonable doubt that the defendant had knowledge, dominion, and control" over the items in the book bag when in Page County. The book bag was put in the closet and had not been disturbed in any way prior to Griffin discovering the psilocyn. Thus, the trial court found the evidence was sufficient, and it convicted Jones of possession of the psilocyn. Jones now appeals.

## II. ANALYSIS

### A. *Possession*

Jones argues that the evidence was insufficient to establish that he had constructive possession of the psilocyn. Specifically, he argues that the evidence did not establish that he had dominion and control over the psilocyn or that he had knowledge of the presence and character of it. Assuming without deciding that Jones's argument below was broad enough to encompass both arguments he makes on appeal, his arguments are without merit.[3]

When reviewing the sufficiency of the evidence underlying a criminal conviction, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Maust v. Commonwealth*, 77 Va. App. 687, 698 (2023) (en banc) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The "appellate court does not 'substitute its own judgment for that of the trier of fact.'" *White v. Commonwealth*, 68 Va. App. 241, 247 (2017) (quoting *Parham v. Commonwealth*, 64

---

[3] The Commonwealth argues that Jones did not properly preserve his argument related to whether the evidence was sufficient to prove that he had knowledge of the presence and character of the psilocyn.

- 4 -

Va. App. 560, 565 (2015)).  Instead, the "relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alteration in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)).

"In interpreting the Commonwealth's basic statutes proscribing possession of drugs, . . . the applicable legal principles are clear: Possession may be actual or constructive." *Wright v. Commonwealth*, 53 Va. App. 266, 273 (2009).  "Constructive possession may be established when there are 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)).  Whether the "evidence is sufficient to prove constructive possession 'is largely a factual' question and requires circumstantial proof." *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)).

Here, the record contains ample evidence that Jones had knowledge of the presence and character of the psilocyn.  The children, along with the book bag, were with Jones from Friday to Sunday.  After the children and the bag were with Griffin, Jones texted Griffin's oldest son asking if *he*, Jones, had left anything in the book bag.  Jones described the green and white pack of cigarettes, which was found in the zippered compartment with the psilocyn.  Thus, Jones identified himself as the person who put the items in the bag, and he accurately identified an item found with the psilocyn.  Prescription medication with his name on it was also found in the same zippered compartment.  Jones also attempted to contact Griffin's child, rather than Griffin herself, which, as the trial court noted, suggests his knowledge of the presence and illegal nature of the items in the book bag.  Once Griffin sent him a photo of the items and told him she was

- 5 -

calling the police, he repeatedly tried to call her. From this evidence, a rational factfinder could find that Jones had knowledge of the presence and character of the psilocyn.

This same evidence also supports the trial court's finding that Jones had dominion and control over the items. The items were not in the book bag on Friday when Griffin sent the bag with the children. At some point while the children were with Jones, the psilocyn, along with the other items, was put in the front compartment of the book bag. Jones's text to Griffin's son indicates that *he* had placed these items in the book bag, and he accurately described at least one of the items found with the psilocyn. The psilocyn was also found alongside medication that had Jones's name on it. *Lewis v. Commonwealth*, 76 Va. App. 92, 103 (2022) (finding constructive possession where the contraband was located in a truck with defendant's personal property, "including his employee 'name badge,' motorcycle vest, notebooks, and receipt"); *Albert v. Commonwealth*, 2 Va. App. 734, 742 (1986) (holding that the evidence established possession of contraband that was near "his wallet, identification papers and a bottle of prescribed medicine bearing his name").

Given Jones's statements indicating that he placed items in the front compartment of the book bag, his accurate description of an item located with the psilocyn, the location of the psilocyn next to Jones's personal items, and his conduct in contacting the minor child rather than Griffin herself, the evidence is sufficient to demonstrate that Jones had both dominion and control over the psilocyn and that he had knowledge of the presence and character of it.

B. *Venue*

Jones argues that the Commonwealth did not establish venue because the evidence was insufficient to prove that he possessed the psilocyn in Page County. We disagree.

"The burden is on the Commonwealth to establish venue." *Williams v. Commonwealth*, 289 Va. 326, 332 (2015). Venue, however, "is not a substantive element of the crime." *Bonner*

*v. Commonwealth*, 62 Va. App. 206, 210 (2013) (en banc) (quoting *Morris v. Commonwealth*, 51 Va. App. 459, 469 (2008)). Thus, the Commonwealth does not need to prove venue beyond a reasonable doubt. *Morehead v. Commonwealth*, 66 Va. App. 241, 244 (2016). "[T]o establish venue[,] the Commonwealth need only 'produce evidence sufficient to give rise to a "strong presumption" that the offense was committed within the jurisdiction of the court.'" *Bonner*, 62 Va. App. at 211 (quoting *Cheng v. Commonwealth*, 240 Va. 26, 36 (1990)). It may be proven "by either direct or circumstantial evidence." *Id.* When reviewing an issue of venue, an appellate court's role is "to determine 'whether the evidence, when viewed in the light most favorable to the Commonwealth, is sufficient to support the [trial court's] venue findings.'" *Id.* (alteration in original) (quoting *Foster-Zahid v. Commonwealth*, 23 Va. App. 430, 442 (1996)).

Venue for a criminal prosecution is generally "proper wherever any element of the offense occurs." *Id.* Possession is a continuing offense. *Hylton v. Commonwealth*, 60 Va. App. 50, 58 (2012). A person who possesses illegal drugs can be tried for possession in any jurisdiction where he or she possessed the drugs. *See Morris*, 51 Va. App. at 467 ("Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each." (quoting *Thomas v. Commonwealth*, 38 Va. App. 319, 324 (2002))).

Although the evidence here is circumstantial, it is sufficient to support a strong presumption that Jones possessed the psilocyn in Page County. The evidence established that the children visited Jones that weekend for Father's Day. The children were dropped off at Griffin's home in Page County on Sunday. Griffin testified that Jones dropped off the children at her home. Although she did not actually see Jones, she testified that the kids were with Jones, she knew that they were with him because she had spoken with her children that day, and the standard operating procedure for custody exchanges was for Jones to "just make sure they were back and on time." She also testified that that Sunday was no different. The book bag was with

the children when they returned. The trial court found Griffin "a very credible witness." *See Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) ("Determining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993))). Viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to establish a strong presumption that Jones was the one who returned the children, and the book bag containing the psilocyn, to their home in Page County. Accordingly, the trial court did not err in finding that the Commonwealth had established venue in Page County.

III. CONCLUSION

For the foregoing reasons, we affirm Jones's conviction.

*Affirmed.*